UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,       )
                                      )
             Appellant,       )
                                      )
                v.          )     No. 1:20-cv-01966-SEB-MG
                                      )
ROBIN S RICHARDS, et al.       )
                                      )
             Appellees.      )

**ORDER ON BANKRUPTCY APPEAL**

The United States of America (the "United States"), on behalf of the Internal Revenue Service ("IRS"), appeals the Bankruptcy Court's July 13, 2020 Order establishing the amount of the IRS's general unsecured claim for the 2018 income tax year in the Chapter 12 bankruptcy of Robin S. and Marianna K. Richards.  Specifically, the United States objects to the Bankruptcy Court's application of 11 U.S.C. § 1232, a provision of the Bankruptcy Code which governs the treatment of unsecured claims of the government arising "after the filing of the petition and before the debtor's discharge … as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation …."  The Debtors rejoin that there is no error in the Bankruptcy Court's Order and that it should therefore be affirmed.

For the reasons detailed below, we <u>AFFIRM</u> the Bankruptcy Court's Order.[1]

---

[1] This Order is being issued concurrently with our Order in *United States v. Richards*, 1:20-cv-2703-SEB-MG, an appeal of the Bankruptcy Court's decision in a jointly administered Chapter 12 case.

## Factual Background

### I.      Background on the Debtors

The Debtors, Robin S. ("Rob") and Marianna ("Marianna") K. Richards, submitted their voluntary petition for relief under Chapter 12 of the Bankruptcy Code on May 3, 2018.  Their case was the lead case of three jointly administered Chapter 12 cases filed by members of the Richards family.  Prior to their bankruptcy petition, the Debtors were involved in a family farming business with Rob's parents, Aaron and Angela Richards, and Rob's brother and sister-in-law, Eric and Cathy Richards, which took on significant debt as part of the family's efforts to expand the farm's operations.  After uncontrollable weather conditions and market price declines caused their farming operation to suffer sustained financial losses from 2013 through 2015, the family's primary lender refused to renew their prior loan, forcing the liquidation of the farm's assets beginning in the spring of 2016.

In 2016, virtually all of the family's farm equipment, vehicles, and other personal property assets, including grain inventory, were liquidated, and the proceeds were paid over to the primary lender and to other lenders with specific purchase money security interests in the relevant assets.  In 2018, after filing their bankruptcy petitions, the Richards family sold additional farmland to satisfy their final obligations to their lender. The liquidation of all these assets generated substantial income tax obligations for the Richards family members for the 2016, 2017, and 2018 tax years, which they were unable to pay.  Thus, through their bankruptcy case, the Debtors sought relief from their tax liabilities generated from the asset liquidation.

## II.      The Chapter 12 Plan

The Debtors submitted their "Chapter 12 Plan of Reorganization" (the "Plan"), on July 30, 2018, which was later confirmed without objection on October 22, 2018.  Upon confirmation "all property of the Estate and property treated under the Plan … vest[ed] or re-vest[ed] in the Debtors," pursuant to the terms of their Plan.  APPX 59 § 11.09.  The Plan recognizes that the Debtors owed amounts to the United States for income taxes arising directly from the sale of farm assets in 2016, 2017, and 2018.  Under the Plan, the Debtors' state and federal tax obligations were divided into two categories: (1) tax liabilities for income arising from the sale, transfer, exchange, or other disposition of any property used in the Debtors' farming operation ("Section 1232 Income"); and (2) tax liabilities arising from other income sources ("Traditional Income").

The Plan provides that tax liabilities arising from Traditional Income would retain priority status and that tax liabilities related to Section 1232 Income would be de-prioritized and treated as general unsecured claims dischargeable upon completion of the Plan if not fully paid.  Specifically, the Plan provides that unpaid income tax obligations related to Traditional Income incurred *prior to* the bankruptcy petition date would retain priority status and be paid in full by the Chapter 12 Trustee within 28 days after confirmation of the Plans ("Priority Tax Liabilities"), while any obligations related to Traditional Income incurred *after* the petition date would be paid by the Debtors directly ("Direct Payment Liabilities").  APPX 51, 58.

Income tax obligations related to Section 1232 income, *regardless of when incurred*, would be de-prioritized and paid by the Chapter 12 Trustee as general

3

unsecured claims that would be discharged if not fully paid upon completion of the Plan.

APPX 50–52.  According to the Plan, Section 1232 unsecured claims would be paid on a

"pro rata basis" along with other general unsecured claims from a variety of sources.

APPX 52, § 3.06.  The Plan further provides that:

> The means of payment described in this Plan are, absent an event of default of this Plan, the exclusive means of post-petition payment of any and all claims, and no creditor shall take action to collect on any claims, whether by offset or otherwise, unless specifically authorized by this Plan.  Any action taken on or between the Petition Date and Confirmation Date shall be reversed and refunded to the appropriate entity if such action is not specifically authorized by this Plan.  This paragraph does not curtail the exercise of a valid right of setoff permitted under § 553.

APPX 58.

The Plan describes the computation of claims amounts subject to Section 1232

treatment[2] as follows: "These [Section 1232] tax claims shall be equal to that amount of

tax resulting on the income tax returns of the Debtors as if the taxable income for the

sale, exchange, transfer or other disposition of the arming assets was excluded from that

tax return, and from the tax resulting had that taxable income been excluded on the

Debtors' returns."  APPX 51.  With regard to the 2016 and 2017 tax years, the Plan

further provides that the "computations under the [above] method are employed by a

comparison of the Debtors' 2016 and 2017 income tax returns, and a *pro forma* income

---

[2] The Plan characterizes this computation method as the "marginal method" approved by the Eighth Circuit Court of Appeals in *In re Knudsen*, 581 F.3d 696 (8th Cir. 2009), which "taxes non-qualifying income at lower marginal tax rates [that] results in a lower tax for income not entitled to beneficial treatment and likely makes reorganization more feasible."  *Id.* at 715.  To do so, the debtors "calculate a tax return for all income, and then a second, pro forma tax return removing all qualifying sales income."  *Id.*

tax return for the same years."[3]  *Id.*  Although the Plan does not state whether the computation of the claim amount for the 2018 tax year should apply this same method, we understand the Debtors to have used this same method for the 2018 calculation.  The Plan is silent regarding how the Debtors' tax withholdings, payments, and credits for each tax year were to be applied or allocated between that year's income tax return and the corresponding *pro forma* tax return.

### III.    The Debtors' and the IRS's Proofs of Claim

The IRS timely filed its proof of claim in the Debtors' bankruptcy case on May 29, 2018, and thereafter amended its proof of claim three times.  APPX 113, 117, 189, 193. The IRS filed its first amendment to its proof of claim for the 2016 and 2017 tax years prior to the Plan's confirmation.  The amended claim identified the IRS's unsecured priority claim in the amount of $389,083.97, and its total unsecured general claim in the amount of $20,339.90.  APPX 120.  Subsequent to the Plan's confirmation, the Debtors objected to the IRS's first amended claim and sought to have a portion of the 2016 and 2017 tax claims related to Section 1232 Income reclassified as general unsecured claims, consistent with the Plan and Section 1232 of the Bankruptcy Code.  APPX 121, 127.  The IRS did not respond to the Debtors' objection, and, on March 21, 2019, the Bankruptcy Court sustained the objection, holding that $9,879.00 of the IRS's claim would be entitled to unsecured priority status, and the remaining amount would be reclassified to unsecured general status.  APPX 133.

---

[3] The Plan notes that a "*pro forma* return is not a true tax return, but instead an analytical tool" used in this case to determine what taxes would be eligible for Section 1232 treatment. APPX 51.

Shortly thereafter, in accordance with the terms of the Plan and 11 U.S.C. §§ 505

and 1232, the Debtors submitted their federal and state tax returns for the 2018 tax year.

APPX 144–188, 217–241. As required by § 1232(d), the Debtors served notice of the

filing on the IRS by letter dated March 29, 2019, along with a copy of their 2018 federal

tax return (the "1080 Return"), which included income from the 2018 sale of farm assets

and showed a tax liability of $100,716, and their 2018 *pro forma* federal tax return (the

"*Pro Forma* Return"), which excluded the income from the 2018 sale of farm assets and

showed a tax liability of $33,391. APPX 144–188, 217–271, 243–262. The Debtors'

March 29 notice triggered the 180-day deadline under § 1232(d)(3) for the IRS to file its

claim for 2018 taxes. The IRS did not file a proof of claim within that timeframe and, on

October 28, 2019, pursuant to § 1232(d)(3), the Debtors filed a claim ("Claim No. 28")

on the IRS's behalf for the 2018 Section 1232 Liabilities in the amount of $67,325,

reflecting the difference in tax liability between the 1080 Return and the *Pro Forma*

Return. Notice of the filing of Claim No. 28 was issued by the Bankruptcy Court on

October 29, 2019 and served on the IRS at multiple addresses. APPX 135–38.

Thereafter, in response to the Debtors' claim submitted on its behalf, the IRS

amended its proof of claim for 2016 and 2017 tax liability, including, for the first time,

tax liabilities for 2018. In that claim, as well as in the IRS's subsequent amendment of

that claim (collectively, "Claim No. 3-4"), the IRS asserted a general unsecured claim of

$61,751 for the 2018 income tax year, excluding penalties and interests. Consistent with

Section 1232, the IRS did not assert that any amount of its claim for the 2018 tax year

was entitled to priority status. APPX 192, 196.

To arrive at the amounts contained in their respective claims, both the Debtors and the IRS first calculated a difference of $67,325 between the tax liabilities reflected in the 1040 Return and the *Pro Forma* Return, representing the tax liability related to the 2018 sale of farm assets entitled to § 1232 treatment under the Plan. Both then applied the $38,965 in 2018 tax payments made by the Debtors to the Direct Payment Liabilities of $33,391, effectively reducing that amount to $0. At this point, however, their methods of calculation diverged, with the Debtors asserting that, after applying Section 1232, their total 2018 tax liability was $33,391, which they accidentally overpaid by $5,574. According to the Debtors, this is a refund to which they are entitled. The IRS, on the other hand, applied the $5,574 "overpayment" to the tax liability arising from the Section 1232 Liabilities which would otherwise be discharged as an unsecured debt under the Plan. Therefore, after applying the $5,574 to the Section 1232 Liabilities, the IRS reached its claim amount of $61,751. Thus, the only difference between the IRS's claim and the Debtors' claim submitted on behalf of the IRS for the 2018 tax year is the $5,574 overpayment calculated on the *Pro Forma* Return.

## IV.    Claim Objection Process

On March 18, 2020, the Debtors objected to the IRS's Claim No. 3-4 on grounds that the claim: (1) ignored the Debtors' right to a refund of the $5,574 and violated the terms of the confirmed Plan by effectuating an improper offset; (2) impermissibly attempted an end-run around § 1232(d)(3) by effectively amending Claim No. 28; and (3) was untimely insofar as it added a claim for 2018 tax liabilities. APPX 5. The United States responded to the Debtors' objection on behalf of the IRS, admitting that Claim No.

7

3-4 was untimely, but arguing that the amendment should be allowed because its late

filing was the result of excusable neglect and disallowance "would permit a claim that is

fundamentally contrary to law."  APPX 271–272.

Approximately one week later, on April 23, 2020, the United States filed its own

objection to Claim No. 28 on grounds that the Debtors' claim amount asserted on behalf

of the IRS for the 2018 income tax year was based upon the incorrect assumption that the

Debtors were owed a federal tax refund in the amount shown on their *pro forma* return

for 2018, when the Debtors, as a matter of law, were not entitled to a refund.  APPX 14.

The United States requested that the Bankruptcy Court allow the IRS's proof of claim for

2018 in the amount claimed by the IRS in Claim 3-4 or, in the alternative, allow the

Debtors' proof of claim filed on behalf of the IRS in the same amount claimed by the

IRS.  APPX 15.

After a hearing on the matter, on July 13, 2020, the Bankruptcy Court entered an

Order on both objections which is the subject of this appeal.  In its Order, the Bankruptcy

Court framed the issue before it as whether the refund amount shown on the *pro forma*

return "should be applied by the IRS to the unsecured tax that will be discharged, or

refunded to the Debtors."  APPX 27.  In addressing this question, the Bankruptcy Court

first sustained the Debtors' objection to the IRS's amended proof of claim, holding that

the claim was untimely, and that the untimeliness was not the result of "excusable

neglect."[4]  APPX 30.  Second, the Bankruptcy Court overruled the objection filed by the

---

[4] The United States is not challenging this part of the Bankruptcy Court's Order in this appeal.

United States to the Debtors' claim submitted on behalf of the IRS on grounds that "sustaining the IRS'[s] objection to Claim #28 effectively amends Claim #28 and would allow the IRS to do indirectly what it by statute is prohibited from doing directly." APPX 31. The Bankruptcy Court then proceeded to address the merits of the objection, holding that the IRS's application of the $5,574 overpayment to "§ 1232-qualified 2018 taxes favored treatment of the IRS's general unsecured claim over those of other creditors in the same class," APPX 32–33, which was contrary to the purpose of § 1232 "to put that capital into the farmers' hands" and also to the provisions of the Plan that "specifically prohibit[ed] payments of such claims in any other manner [than prescribed in the Plan], including setoff." APPX 33. Accordingly, the Bankruptcy Court found that the Debtors' claim submitted on behalf of the IRS was "not unenforceable" under 11 U.S.C. § 502(b)(1) and allowed the claim as filed, effectively holding that the $5,574 could not be applied to the Section 1232 Liabilities. However, the Debtors did not request that the Bankruptcy Court order the IRS to refund the $5,574 to the Debtors, nor did the Bankruptcy Court so order.

### V.    The Instant Appeal

On July 28, 2020, the United States filed its notice of appeal of the Bankruptcy Court's July 13, 2020 Order. In this appeal, the United States challenges only the portion of the Bankruptcy Court's order Overruling the United States' objection to Claim No. 28 and allowing the claim as filed. We granted the United States' motion to consolidate this case with *United States v. Richards*, No. 1:20-cv-2703-SEB-MG for oral argument only, which was held virtually on July 28, 2021. Attorneys from both sides appeared, as well

9

as the Chapter 12 Trustee.  In addition to presenting oral argument, the parties have fully

briefed the issues, and the matter is now ripe for ruling.

## Legal Analysis

### I.      Standard of Review

This Court has power to review the final judgment of the United States

Bankruptcy Court for the Southern District of Indiana pursuant to 28 U.S.C. § 158(a)(1).

We review the legal conclusions reached by the Bankruptcy Court *de novo*. *Ojeda v.*

*Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *In re Midway Airlines, Inc.*, 69 F.3d 792,

795 (7th Cir. 1995).  The Bankruptcy Court's findings of fact are reviewed for clear error.

*In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998).

### II.     Applicable Law

Section 1232 was enacted by Congress in response to *Hall v. United States*, 132

S.Ct. 1882 (2012), in which the United States Supreme Court held that the predecessor to

Section 1232, formerly Section 1222(a)(2)(A), did not apply to federal income tax

liability resulting from a debtor's post-petition sale of farm assets because such tax was

not "incurred by the estate" and would not otherwise be entitled to priority status under

11 U.S.C. § 507.  *Id.* at 508.  Accordingly, under the majority's holding, such post-

petition tax claims could be collected by tax authorities as if they were ordinary tax debts.

The dissent, in criticizing the majority opinion, reasoned that the full payment of large

post-petition tax debts could in many cases leave debtors with insufficient assets and

income to meet their obligations to other creditors under the Bankruptcy Code, which, in

10

turn would lead to the failure of their bankruptcy case, contrary to the intended purpose of the statute.  *Id.* at 529 (Breyer, J., dissenting).

A few years following *Hall*, on October 26, 2017, Congress enacted the Family Farmer Bankruptcy Clarification Act which added Section 1232 to Chapter 12 of the Bankruptcy Code and made other amendments in order to clarify that tax obligations incurred as the result of the sale, transfer, exchange or other disposition of any property used in a debtor's farming operation, whether that transaction occurred prior to or during a Chapter 12 bankruptcy case, could be de-prioritized and discharged.  Specifically, the text of Section 1232 provides in relevant part as follows:

> (a)     Any unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation—
>
> > (1)     shall be treated as an unsecured claim arising before the date on which the petition is filed;
> >
> > (2)     shall not be entitled to priority under section 507;
> >
> > (3)     shall be provided for under a plan; and
> >
> > (4)     shall be discharged in accordance with section 1228.

11 U.S.C. § 1232(a).

The "goal" of the statute as described at the time it was introduced on the Senate floor was to "relieve family farmers from having their reorganization plans fail because of certain tax liabilities owed to the government."  163 Cong. Rec. S3216 (daily ed. May 25, 2017) (statement of Sen. Grassley).

## III.    Discussion

The United States argues that the Bankruptcy Court erred in allowing the Debtors'
proof of claim submitted on behalf of the IRS under 11 U.S.C. § 502 in the amount of
$67,325, instead of $61,751.  Specifically, the United States argues that the Bankruptcy
Court's order disregards the text of Section 1232, as a plain reading of the statute shows
no reference or right to any "overpayment" or "refund" upon which the Debtors' proof of
claim is based.  Rather, the section applies to "claim[s]" against debtors, which in this
case, according to the United States, is the IRS's "claim" for the Debtors' 2018 tax
liability, after crediting payments and withholdings, and nothing more; it cannot include
amounts the Debtors already paid toward their liability or be based on an amount shown
on the *Pro Rata* Return, which is solely an analytical tool to determine the amount of tax
entitled to priority treatment, not to calculate the amount of underlying liability owed.
The United States claims that the Bankruptcy Court's order, by creating a new refund
right under Section 1232, also disregards the circumscribed purpose of the statute which
is merely to allow Chapter 12 debtors to clear their debts in order to proceed with their
bankruptcy case, a purpose it achieves through its priority-stripping and discharge
provisions for pre- and post-petition claims, not via a right to refund.

In support of its position, the United States relies heavily on a recent decision of
the Eighth Circuit Bankruptcy Appellate Panel ("B.A.P.") in the case of *Iowa Department
of Revenue v. DeVries*, 621 B.R. 445 (8th Cir. B.A.P. 2020).  In *DeVries*, the debtors
sought to disgorge withholding payments that the debtors had made to the taxing

authorities two years prior to the petition date on account of pre-petition Section 1232

liabilities.  *Id.* at 447.  Before filing for bankruptcy, the debtors had partially paid the pre-

petition Section 1232 liabilities through withholding tax payments.  *Id.*  Through their

Chapter 12 plan, the debtors requested that the bankruptcy court not only discharge the

remainder of the unpaid pre-petition Section 1232 liabilities, but also require the taxing

authorities to refund those pre-petition partial payments that had been made against the

Section 1232 liabilities.[5]  *Id.*  The Eighth Circuit B.A.P. determined that the Chapter 12

plan requiring the taxing authorities to disgorge pre-petition tax payments could not be

confirmed because "nothing in Section 1232 authorizes a debtor's Chapter 12 plan to

require a taxing authority to disgorge, refund, or turn over pre-petition withholdings for

the benefit of the estate."  *Id.* at 448.

However, as the Eighth Circuit B.A.P. recognized in *DeVries*, unlike the

circumstances presented there, where the compelled disgorgement of *pre-petition*

holdings was at issue *prior* to plan confirmation, here, the sale of property at issue

occurred *post-petition* and the case was decided in the context of a claim objection *after*

the Plan had been confirmed.  Moreover, the Eighth Circuit B.A.P. also recognized in

distinguishing this case from the circumstances in *DeVries* that the Debtors' Plan here

specifically addressed the exclusive means of post-petition payment of the IRS's claims

---

[5] The Debtors here also made partial payments against their pre-petition Section 1232 liabilities, but, unlike the debtors in *DeVries*, have not sought to recover those pre-petition payments.

"from plan payments and other sources *and prohibited the application of payment advocated by the taxing authority*."  *DeVries*, 621 B.R. at 449 (emphasis added).

We find the distinctions recognized by the *DeVries* Court to be determinative of this appeal.   A post-petition claim, like that at issue here, must be determined in conformity with Section 1232 and the terms of the Plan, to which the IRS raised no objection.  Under the plain language of Section 1232, the Debtors are entitled to deprioritize all their post-petition Section 1232 Liabilities, not just a portion.  To determine the total amount subject to de-prioritization under Section 1232, the Plan provided that the Debtors' income tax liability for a given year was to be divided into two categories, to wit, Direct Payment Liabilities and Section 1232 Liabilities, each of which was to receive its own treatment under the Plan.  The Section 1232 Liabilities, the amount of which was determined through application of the marginal method, were to be deprioritized and treated as a general unsecured claim that would be paid by the Chapter 12 Trustee on a pro rata basis.  The Direct Payment Liabilities were to be paid directly by the Debtors.  The Plan explicitly provided that the means of payment described therein were the exclusive means of post-petition payment of any and all claims and creditors were forbidden to take action to collect on a claim unless that action was authorized by the Plan.  APPX 58.

Applying the marginal method, a comparison of the Debtors' 2018 1040 Return, which included their Section 1232 Income, and the *Pro Forma* Return, excluding their Section 1232 Income, showed a tax liability difference totaling $67,325, the amount that,

per the terms of the Plan and in accordance with Section 1232, was to be deprioritized

and treated as a general unsecured claim.  The amount of Direct Payment Liabilities not

attributable to Section 1232 income, which the *Pro Forma* Return calculated at $33,391,

was to be paid directly by the Debtors.  However, through a combination of withholding

and estimated tax payments, the Debtors inadvertently paid $38,965 to the IRS during

2018.  The Debtors therefore paid $5,574 more toward Direct Payment Liabilities than

the IRS was entitled to collect under the terms of the Plan.

In this context, the Bankruptcy Court correctly found that the IRS was not entitled

under the Plan to retain the $5,574 and credit that amount against the 2018 Section 1232

Liabilities.  As discussed above, the Plan explicitly provided that the Debtors were to pay

their post-petition tax liabilities for non-Section 1232 income through income

withholding or other payments made directly to the IRS.  The Debtors therefore were not

authorized to make—nor was the IRS authorized to receive or retain—additional

payments on account of the deprioritized tax liabilities related to Section 1232 income.

Rather, the IRS was entitled to receive only its pro rata share of the Plan distributions for

the Section 1232 Liabilities.  Because the Plan did not authorize the Debtors to pay more

in Direct Payment Liabilities than calculated under the marginal method or authorize the

IRS to retain any additional amount, the Bankruptcy Court correctly held under the terms

15

of the Plan that the Debtors' proof of claim filed on behalf of the IRS in the amount of

$67,325 was not unenforceable.[6]

Contrary to the United States' arguments otherwise, this result aligns with both the

text and the purpose of Section 1232.  The plain language of Section 1232 requires that

"any unsecured claim" of a governmental unit arising as a result of the post-petition

disposition of farming assets be stripped of its priority and treated as an unsecured claim

arising before the date on which the petition is filed, that the debt be provided for under

the Plan, and that the debt be discharged in accordance with Section 1228 of the

Bankruptcy Code.  11 U.S.C. § 1232(a).  It is this language that the Bankruptcy Court's

Orders enforced.

To find, as the United States urges us to do, that the Bankruptcy Court's holdings

contravene this plain language, we must accept that the IRS's Section 1232 "claim,"

which term is defined under the Bankruptcy Code as "a right to payment," is not equal to

the total tax liability related to the farmland sold by the Debtors in 2018, but rather the

balance that remained after the IRS applied the Debtors' $5,574 against those liabilities.

That can only be true if the "claim" of the IRS against the Debtors for 2018 Section 1232

Liabilities did not arise when the income from the sale of farming assets was generated,

but instead arose only after the 2018 tax year was concluded, all withholding and

---

[6] Because we affirm the Bankruptcy Court's Order on the merits, we need not and do not address
the Debtors' alternative argument that the IRS's failure to timely file its own proof of claim bars
the United States under Rule 3001(f) and the terms of Section 1232(d)(3) from objecting to the
claim filed by the Debtors on the IRS's behalf.

estimated tax payments had been made, and the Debtors' 2018 1040 Return had been

filed and processed by the IRS.  As the Bankruptcy Court recognized, however, taxes

arising post-petition were to be paid by the Debtors as they became due; thus, the IRS's

"claim" or "right to payment" arose when the income was generated.[7]  The "claim" of the

IRS under Section 1232 is therefore equal to the full tax liability incurred related to the

farmland sale and Section 1232 mandates that the entirety of this debt be deprioritized

and discharged, as the Bankruptcy Court held.

Moreover, we are not persuaded by the United States' contention that sovereign

immunity bars the relief granted by the Bankruptcy Court in its Order.  As explicated

above, the Bankruptcy Court's ruling here resolved a claim objection, as it was required

to do under the terms of the Plan, and nothing more.  The claim objection was filed

pursuant to Section 502(b) of the Bankruptcy Code, and 11 U.S.C. § 106 of the

Bankruptcy Code provides that sovereign immunity is abrogated as to matters arising

under Section 502.  Further, the claim objection here is based upon the IRS's violation of

the terms of the Plan that direct the manner in which tax claims are to be classified and

---

[7] As the Debtors emphasize, this position aligns with the IRS's own characterization of the United States income tax system as a "pay-as-you-go tax system, which means you must pay income tax as you earn or receive your income during the year." *Topic No. 306 Penalty for Underpayment of Estimated Tax*, https://www.irs.gov/taxtopics/tc306.  Likewise, the Internal Revenue Code provides that individuals are required to make periodic payments against their income tax liabilities throughout the tax year, as taxable income is earned, either through income withholding or estimated tax payments. *See* I.R.C. § 1, § 6654(c), (d).  The Internal Revenue Manual provides that "[t]axpayers are generally required to pay income tax as income is earned" and taxpayers who either do not have sufficient funds withheld or who fail to make estimated tax payments "may be assessed a penalty for underpayment of estimated tax" the purpose of which "is not so much to penalize the taxpayer as it is to compensate the United States for the use of the money that should have been paid over to the U.S. Treasury.  IRM § 20.1.3.1.1.

paid.  Section 10.01 of the Plan provides that the Bankruptcy Court retains jurisdiction to

"hear and determine disputes arising from the Plan or its implementation."  Both the

Debtors and the IRS, like every other creditor in the case, are bound by the terms of the

confirmed Plan under Section 1227 of the Bankruptcy Code, and Section 106(a)

abrogates sovereign immunity with respect to Section 1227.   Accordingly, the Order

does not wrongfully impinge upon or otherwise constitute a violation of the United

States' sovereign immunity.

## IV.    Conclusion

For the reasons detailed above, the Bankruptcy Court's July 13, 2020 Order is

AFFIRMED.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:  _____9/30/2021_____          _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Wendy D. Brewer
FULTZ MADDOX DICKENS PLC
wbrewer@fmdlegal.com

Laura M. Brymer
FULTZ MADDOX HOVIOUS & DICKENS PLC
lbrymer@fmdlegal.com

Andrew M. Eberly
OFFICE OF JOSEPH M. BLACK, JR., STANDING CHAPTER 13 TRUSTEE
jmbecf@trustee13.com

Samuel Patrick Jones
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
samuel.p.jones@usdoj.gov